**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 13-04016-02-CR-C-BP |
| **BOGDAN NAHAPETYAN,** | |
| Defendant. | |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri, represented by Tammy Dickinson, United States Attorney, Lawrence E. Miller, Assistant United States Attorney, the United States Department of Justice Environmental Crimes Section, represented by Trial Attorney James B. Nelson, (otherwise referred to as "the Government" or "the United States"), and the defendant, Bogdan Nahapetyan ("the defendant"), represented by Randall M. England.

The defendant understands and agrees that this plea agreement is only between him, the United States Attorney for the Western District of Missouri, and the Environmental Crimes Section, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to an information, charging him with a violation of 16 U.S.C. §§ 3372(a)(2)(A) and

3373(d)(2), that is, Lacey Act trafficking. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is, in fact, guilty of this offense.

3. **<u>Factual Basis for Guilty Plea</u>.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

> The American paddlefish (*Polydon spathula*), also called the Mississippi paddlefish or the spoonbill (hereafter "paddlefish") is a freshwater fish that is primarily found in the Mississippi River drainage system. Paddlefish eggs are marketed as caviar. Paddlefish were once common in waters throughout the Midwest. However, the global decline in other caviar sources, such as sturgeon, has led to an increased demand for paddlefish caviar. This increased demand has led to over-fishing of paddlefish, and consequent decline of the paddlefish population.
>
> Missouri law prohibits the taking, possession, purchase, sale, or import of any wild animal, including fish and fish eggs, except as authorized by law. 3 CSR 10-4.110.
>
> Missouri law provides that, except for deer and turkeys taken in Missouri, persons possessing wildlife taken by another shall plainly label that wildlife with the full name, address, and permit number of the taker and the date taken. 3 CSR 10-4.
>
> Missouri law provides that no person may harvest or possess more than two paddlefish per day. 3 CSR 10-6.525
>
> Missouri law provides that paddlefish eggs which are removed or extracted from a paddlefish carcass may not be possessed while on waters of the State of Missouri, or the adjacent banks. 3 CSR 10-6.525
>
> Missouri law prohibits the transportation of paddlefish eggs which have been removed or extracted from a paddlefish carcass. 3 CSR 10-6.525
>
> The Lacey Act makes it unlawful for any person to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce any fish that was taken, possessed, transported, and sold in violation of any law or regulation of any State. 16 U.S.C. § 3372(a)(2)(A).
>
> During March and April of 2011 and 2012, the U.S. Fish and Wildlife Service ("FWS") and the Missouri Department of Conservation ("MDC") conducted a covert investigation, "Operation Roadhouse," centered on an area known as the Roadhouse in Warsaw, Benton County, Missouri. The Roadhouse and the

immediate area were leased by FWS for the duration of the Missouri paddlefish season which runs from March 15 through April 30.

As part of the covert business, state and federal officers operated a paddlefish snagging business. Specifically, officers sold permits to customers wanting to snag paddlefish from the Roadhouse dock area on Lake of the Ozark, just below Truman Dam. Prior to snagging, individuals were required to purchase a daily snagging permit. This permit was valid from the time of purchase until 8:00 a.m. the following morning. The permits were sold to the general public for $8.00 per day per person, or $75.00 for the season. When the permit was sold, officers obtained identifying information, i.e., name, address, telephone number, driver's license information, etc., for each individual. The permits were comprised of the top white original, a yellow carbon copy and a pink carbon copy. The snagger was given the pink copy as proof that he or she had paid for utilizing the area on that day. A customer could also launch a boat from the Roadhouse upon purchase of an $8.00 launch permit.

Beginning on March 20, 2012, and continuing through April 24, 2012, the defendant had numerous interactions and conversations with undercover FWS and MDC investigators concerning the purchase of female paddlefish and paddlefish eggs. Although the investigators informed the defendant numerous times that the purchase of paddlefish was illegal in the State of Missouri, the defendant arranged to purchase numerous female paddlefish and multiple pounds of paddlefish eggs.

Specifically, on April 24, 2012, the defendant negotiated with the undercover investigators, eventually purchasing eighty (80) pounds of paddlefish eggs and five (5) female paddlefish for $4,625 in U.S. currency. Co-defendant Petr Babenko (identified by the defendant as an "expert") and the defendant tasted samples of the caviar, before Babenko pronounced it, "Very good, a little bit salty, but not bad."

While loading the purchased caviar and female paddlefish into their van, the defendant and Babenko placed an additional order with the undercover investigators for more fish and caviar. Once the defendant and Babenko left the Truman Lake area, surveillance was conducted on the van until Babenko and an unknown male departed Missouri with the paddlefish, eggs and processed caviar on April 25, 2012. At all times, the defendant knew that Babenko was from New Jersey, and that Babenko transported the paddlefish, eggs and processed caviar from Missouri to New Jersey. At all times, the defendant knew, or should have known, that both his and Babenko's actions were illegal.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other

3

portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

**5.** **Statutory Penalties.** The defendant understands that, upon his plea of guilty to the information, charging him with Lacey Act trafficking, the maximum penalty the Court may impose is not more than one (1) year's imprisonment, not more than one (1) year's supervised release, a $100,000 fine, and a $25 mandatory special assessment per misdemeanor count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A misdemeanor.

**6.** **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than one (1) year; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one (1) year is imposed;

4

        d.     if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to one (1) year without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed one (1) year, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

        e.     the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

        f.     any sentence of imprisonment imposed by the Court will not allow for parole;

        g.     the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

        h.     the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

**7.** **<u>Government's Agreements.</u>** Based upon evidence in its possession at this time, the United States, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to Lacey Act trafficking for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States agrees to dismiss Counts One and Two of the Indictment as to the defendant at sentencing. The United States makes no agreement or representation to the defendant as to the effect of his conviction under this agreement on his immigration status.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States has no knowledge.

5

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8.  Preparation of Presentence Report.**  The defendant understands that the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9.     Withdrawal of Plea.**           Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10.     Agreed Guidelines Applications.**     With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

> a.     The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";
>
> b.     The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2Q2.1, which provides for a base offense level of 6;
>
> c.     The Government believes that there will be a 2-level enhancement for pecuniary gain under U.S.S.G. § 2Q2.1(b)(1), and up to a 6-level enhancement for market value under U.S.S.G. § 2Q2.1(b)(3);
>
> d.     The defendant has admitted his guilt and clearly accepted responsibility for his actions. Consequently, he is entitled to a 2-level reduction pursuant to § 3E1.1(a) of the Sentencing Guidelines;
>
> e.     There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

g. The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

**11.     Effect of Non-Agreement on Guidelines Applications.**     The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12.     Change in Guidelines Prior to Sentencing.**     The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its

8

option to void the plea agreement, the United States may charge, reinstate or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the information;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free, on appeal or collateral proceedings, to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of: (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

   b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees that a special assessment will be imposed as part of the sentence in this case. The defendant promises to pay the special assessment of $25 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or authorize any third party to

request or receive, from any department or agency of the United States, any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. <u>Waiver of Claim for Attorney's Fees</u>.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. <u>Defendant's Breach of Plea Agreement</u>.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the United States Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20.** **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorney, or any other party to induce him to enter his plea of guilty.

**21.** **Immigration Consequences.** The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because the defendant is pleading guilty to Lacey Act trafficking, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Nevertheless, the defendant affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States. Further, the defendant understands that he is bound by his guilty plea, regardless of any immigration consequences of the plea, and regardless of any advice the defendant has received from his counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or collateral attack of any kind challenging his guilty

12

Case 2:13-cr-04016-SRB   Document 53   Filed 11/13/13   Page 12 of 14

plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction and sentence.

22. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court *in camera*, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement, or any written supplemental agreement, do not constitute any part of the parties' agreement, and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles, and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**Tammy Dickinson**
United States Attorney

By          /S/

Dated  11/12/13

**Lawrence E. Miller**
Assistant United States Attorney
Missouri Bar No. 39531

By          /S/

Dated  11/12/13

**James B. Nelson**
Trial Attorney
U.S. Department of Justice

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement, and I voluntarily agree to it.


Dated  11/12/13                           /S/
                                          **Bogdan Nahapetyan**
                                          Defendant


I am defendant Bogdan Nahapetyan's attorney. I have fully explained to him his rights with respect to the offense charged in the information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Bogdan Nahapetyan's decision to enter into this plea agreement is an informed and voluntary one.


Dated  11/12/13                           /S/
                                          **Randall M. England**
                                          Attorney for Defendant

14